IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BANK OF BEAVER CITY, The, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3209 |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER ON |
| | ) | PENDING MOTIONS |
| SOUTHWEST FEEDERS, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On October 26, 2010, Plaintiff The Bank of Beaver City ("the Bank") filed a complaint against Defendant Southwest Feeders, L.L.C. ("Southwest Feeders"), seeking to recover more than $1 million in proceeds from the sale of cattle in which the Bank held a security interest. (See generally Compl., ECF No. 1.) Southwest Feeders filed a second amended answer to the complaint on May 5, 2011, which includes a number of affirmative defenses. (See generally Second Am. Answer, ECF No. 51.)[1] The Bank has moved to strike a number of Southwest Feeders' affirmative defenses, (ECF No. 55), and it has filed an objection to the evidence submitted by Southwest Feeders in opposition to the Bank's motion to strike, (ECF No. 65). Thereafter, Southwest Feeders moved for leave to amend its affirmative defenses, (ECF No. 68), and the Bank filed an objection to Southwest Feeders' motion for leave to amend, (ECF No. 70). Then on September 20, 2011, Southwest Feeders filed a motion for leave to supplement its affirmative defenses. (ECF No. 74.)[2] Filing numbers 55, 65, 68, 70, and 74 are now ripe for resolution. For the following reasons, the Bank's objection to Southwest Feeders' exhibits will be sustained, the Bank's motion to strike will be granted in part, Southwest Feeders' motion for leave to amend will be granted, the Bank's

---

[1] The second amended answer is captioned "Amended Answer to Complaint." (ECF No. 51.) In fact, however, it is the second amended answer. (See Answer, ECF No. 14; Am. Answer, ECF No. 39; Second Am. Answer, ECF No. 51.)

[2] Southwest Feeders represents that the Bank has no objection to its motion for leave to supplement its defenses. (Mot. at 2, ECF No. 74.)

objection to Southwest Feeders' motion to amend will be overruled, and Southwest Feeders' motion for leave to supplement its affirmative defenses will be granted.

## I.   BACKGROUND

The plaintiff's complaint alleges as follows.  The Bank "is a state-chartered bank organized and existing under the laws of the State of Oklahoma with its principal place of business in Beaver, Oklahoma." (Compl. ¶ 1, ECF No. 1.)  Southwest Feeders "is a limited liability company organized and existing under the laws of the State of Nebraska."  (Id. ¶ 2.)  It "owns and operates a cattle feedyard in Hayes County, Nebraska."  (Id. ¶ 4.)

Jon Dane Morris and Misty Morris are residents of Beaver County, Oklahoma, and are shareholders of Lucky Moon Land and Livestock, Inc. ("Lucky Moon").  (Id. ¶¶ 5-7.)  Jon Dane Morris is also the President of Lucky Moon.  (Id. ¶ 8.)  Lucky Moon "is a corporation organized and existing under the laws of the State of Oklahoma[,] with its principal place of business in Beaver County, Oklahoma."  (Id. ¶ 6.)

The Bank has loaned money to Lucky Moon since April 2003, and Lucky Moon (through Jon Dane Morris) executed promissory notes and security agreements in favor of the Bank.  (Id. ¶¶ 9-10.)  These security agreements "granted to the Bank a security interest in . . . all livestock and proceeds of livestock owned by Lucky Moon."  (Id. ¶ 11.)  In addition, the Morrises, acting in their individual capacities, executed "a Guaranty and Security Agreement in favor of the Bank" that "granted to the Bank a security interest in . . . all livestock and proceeds of livestock owned by the Morrises."  (Id. ¶¶ 12-13.)

At all relevant times, Oklahoma and Nebraska have had "central filing systems" within the meaning of the Food Security Act of 1985, 7 U.S.C. § 1631.  (Id. ¶ 20.)[3]  Between April 2003 and July 2009, the Bank filed a number of financing statements with the County Clerk of Oklahoma County, Oklahoma.  Specifically, it filed a UCC Financing Statement on August 5, 2004, and it filed

---

[3] "The term 'central filing system' means a system for filing effective financing statements or notice of such financing statements on a statewide basis and which has been certified by the Secretary of the United States Department of Agriculture . . . ."  7 U.S.C. § 1631(c)(2).

a UCC Continuation Statement on July 10, 2009, "identifying as collateral . . . all livestock and proceeds owned by Lucky Moon." (Id. ¶ 14.) It filed a UCC Financing Statement on April 2, 2003, and a UCC Financing Statement Amendment on February 12, 2008, "identifying as collateral . . . all livestock and proceeds owned by Jon D. Morris and Dane Morris." (Id. ¶ 16.) Also, it filed "a UCC Financing Statement on or about September 8, 2003, and a UCC Financing Statement Continuation on or about July 25, 2008, identifying as collateral . . . all livestock and proceeds owned by John D. Morris and Misty Morris." (Id. ¶ 18.)

The Bank also filed financing statements with the Oklahoma Secretary of State. Specifically, it filed an Oklahoma Effective Financing Statement on August 9, 2004, and an Oklahoma Effective Financing Statement Continuation on July 9, 2009, "describing the farm products subject to a security interest as being all cattle and calves owned by Lucky Moon"; it filed a second Oklahoma Effective Financing Statement on April 10, 2003, and a second Oklahoma Effective Financing Statement Continuation on March 12, 2008, "describing the farm products subject to a security interest as being all cattle and calves owned by Jon Dane Morris"; and it filed a third Oklahoma Effective Financing Statement on September 8, 2003, and a third Oklahoma Effective Financing Statement Continuation on August 6, 2008, "describing the farm product[s] subject to a security interest as being all cattle and calves owned by Misty Morris." (Id. ¶¶ 15, 17, 19.)

The Bank alleges that between November 2006 and August 2007, "Lucky Moon and/or the Morrises caused [livestock] owned and possessed by Lucky Moon and/or the Morrises and subject to the Bank's security interest to be delivered from Lucky Moon's and/or the Morrises' possession in Oklahoma to the possession and control of Southwest [Feeders]." (Id. ¶ 22.) Acting "as a selling agent, commission merchant or otherwise," Southwest Feeders then sold the aforementioned livestock to third-party buyers, but it did not "register with the Oklahoma Secretary of State prior to the [sale]." (Id. ¶¶ 23, 29.) Southwest Feeders deducted costs and expenses, including "feed costs, processing costs, medication costs, brand inspection fees, insurance premiums, freight charges, 'Hedge' costs, 'Put Option Contact' costs, 'Forward Contract' costs[,] and interest," from the proceeds of the sale. (Id. ¶ 25.) After making these deductions, Southwest Feeders "drafted a check payable only to Dane Morris," and not "jointly payable to the Bank." (Id. ¶¶ 27-28.) The Bank claims that it did not authorize the sale of the livestock "free and clear" of its security interest. (Id.

¶ 24.)  The Bank also claims that it never consented to Southwest Feeders' use of proceeds from the sale of the livestock; nor did it ever receive written notice from Southwest Feeders indicating that it "was claiming or would claim a lien in any of the [livestock]."  (<u>Id.</u> ¶¶ 25-26.)

According to the Bank, the livestock sold by Southwest Feeders had a market value of at least $1,020,024 at the time of its sale, and Lucky Moon owes a debt to the Bank that exceeds this amount.  (<u>Id.</u> ¶¶ 30, 32.)  The Bank alleges, "The unauthorized and wrongful dominion and control exerted by Southwest [Feeders] over the [livestock] and the proceeds of [the livestock] in which the Bank had a perfected security interest has deprived the Bank of its rights, as a secured party, in the [livestock] and the proceeds from the [livestock]."  (<u>Id.</u> ¶ 38.)  It adds that Southwest Feeders "failed to comply with the Food Security Act and the Uniform Commercial Code by not paying the Bank the proceeds from the sale of the Lucky Moon or Morrises' [livestock]."  (<u>Id.</u> ¶ 39.)

On December 20, 2010, Southwest Feeders filed an answer to the Bank's complaint and a third party complaint against Lucky Moon, John Dane Morris, and Misty Morris.  (ECF No. 14.) Southwest Feeders' third party complaint includes three causes of action.  Count I, titled "Contribution," alleges that if the Bank obtains a judgment against Southwest Feeders, "Southwest Feeders is entitled to contribution and/or indemnification from [the Morrises] and Lucky Moon" because they represented that the livestock was "free and clear of any and all liens and security interests."  (Third Party Compl. ¶¶ 9, 12, ECF No. 14.)  Count II, titled "Breach of Warranty," alleges that to the extent that the livestock in question was "subject to any security interest of [the Bank], [the Morrises] and Lucky Moon breached the warranty of title under Neb. U.C.C. § 2-312 or O.S. § 2-312 by making representations that [the livestock was] delivered free from any and all security interest[s]."  (<u>Id.</u> ¶ 14.)  Count III, titled "Fraudulent Misrepresentation," alleges that the Morrises and Lucky Moon induced Southwest Feeders to purchase the relevant livestock by falsely representing that the livestock was "free and clear of any security interests or liens."  (<u>Id.</u> ¶¶ 19-22.) On March 18, 2011, Southwest Feeders moved for an entry of default against the third party defendants. (Mot., ECF No. 37.)  <u>See also</u> Fed. R. Civ. P. 55(a); NECivR 55.1(a).  This motion was granted, and the clerk entered the third party defendants' default on March 22, 2011.  (ECF No. 38.)

Southwest Feeders filed an amended answer on March 23, 2011, (ECF No. 39), and a second amended answer on May 5, 2011, (ECF No. 51). In its second amended answer, Southwest Feeders admits that it purchased livestock from "Dane Morris" during the fall of 2006, that it sold this livestock to third party buyers, and that it deducted costs and expenses for the care of the livestock from the proceeds of the sale. (Second Am. Answer ¶¶ 3-5, ECF NO. 51.) It denies, among other things, that the Bank had rights in the livestock or the proceeds of the livestock through a security interest, that the Bank did not authorize "the disposition of any proceeds of any [livestock] owned by Lucky Moon and/or the Morrises free and clear" of any security interest held by the Bank, and that Southwest Feeders' actions were wrongful or unlawful. (Id. ¶¶ 7-8 (citing Compl. ¶¶ 33, 35-40).)

The second amended answer also lists a number of affirmative defenses. (See id. ¶¶ 10-19.) These include allegations that the Bank "authorized, consented to and acquiesced in the sale of the [livestock]"; that defenses such as "implied consent and waiver through a course of conduct" are available to Southwest Feeders; that Southwest Feeders "did nothing wrong in the purchase or sale of the [livestock]"; that the Bank's "claims are barred by the doctrine of avoidable consequences"; that the Bank's "claims are barred by the innocent two parties rule"; that the Bank "has been unjustly enriched for the amount of costs incurred" by Southwest Feeders in connection with the sale of the livestock; and that the Bank "failed to mitigate [its] claimed damages." (Id. ¶¶ 12-14, 16-19.)

On May 31, 2011, the Bank filed a motion to strike the aforementioned affirmative defenses pursuant to Federal Rule 12(f). (ECF No. 55.) On June 30, 2011, Southwest Feeders filed a response to the Bank's motion and an "Index of Evidentiary Materials" that includes five exhibits. (See generally ECF Nos. 62-63.) None of these exhibits has been incorporated into the pleadings. (Compare ECF Nos. 62-63 with ECF Nos. 1, 14, 39, 51.) The Bank then filed a reply brief in support of its motion to strike and an objection to the exhibits filed by Southwest Feeders. (See generally ECF Nos. 65-66.) On September 2, 2011, Southwest Feeders filed a motion for leave to amend its affirmative defenses. (ECF No. 68.) The Bank responded by filing an objection to Southwest Feeders' motion for leave to amend on September 15, 2011. (ECF No. 70.) On September 20, 2011, Southwest Feeders filed a motion for leave to supplement its affirmative defenses. (ECF No. 74.) My analysis of these filings follows.

5

## II.   STANDARD OF REVIEW GOVERNING MOTIONS TO STRIKE

Federal Rule of Civil Procedure 12(f) states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.21 at 2437 (2d ed. 1975)). Although "[j]udges enjoy liberal discretion to strike pleadings under rule 12(f)," the Eighth Circuit has stated that "[s]triking a party's pleading . . . is an extreme and disfavored measure." BJC Health System v. Columbia Casualty Co., 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted).[4]

"Generally, well pleaded facts are accepted as true" when a court analyzes a motion to strike, "and matters outside the pleadings will not be considered in support of the motion." Johnson v. Metropolitan Sewer Dist., 926 F. Supp. 874, 875 (E.D. Mo. 1996) (citing 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.21[3] (2d ed. 1995)). See also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed. 2011) ("Matter outside the pleadings normally is not considered on a Rule 12(f) motion; for example, affidavits in support of or in opposition to the motion typically may not be used." (Footnotes omitted)).

---

[4] District courts have harshly criticized motions to strike, stating,

> Indeed, motions to strike can be nothing other than distractions. If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record–such as on a motion for summary judgment.

Morgan v. Midwest Neurosurgeons, LLC, No. 1:11-cv-37 (CEJ), 2011 WL 2728334, at *2 (E.D. Mo. July 12, 2011) (quoting Van Schouwen v. Connaught Corp., 782 F. Supp. 1240, 1245 (N.D. Ill 1991)).

### III.   ANALYSIS

#### A.   The Plaintiff's Objections to the Defendant's Exhibits

The Bank objects to my consideration of the evidence submitted by Southwest Feeders in opposition to the Bank's motion to strike, arguing that the motion to strike should be "determined upon the pleadings involved and not upon matters outside the pleadings, such as affidavits or other documentary evidence." (Objection at 1, ECF No. 65. See also Pl.'s Reply Br at 2, ECF No. 66.) I agree with the Bank.

Rule 12(f) does not indicate whether matters outside the pleadings may be considered in connection with a motion to strike, and it seems that the Eighth Circuit has not yet addressed this question. As I noted above in Part II, however, courts generally do not consider matters outside the pleadings when analyzing a motion to strike. See, e.g., 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed. 2011). In any case, I have reviewed Southwest Feeders' exhibits, and I do not find them to be helpful in my analysis of the Bank's motion to strike. I shall therefore sustain the Bank's objections to the exhibits.

#### B.   The Plaintiff's Motion to Strike

The Bank moves to strike seven of Southwest Feeders' affirmative defenses, arguing that they are "insufficient and not plausible." (Mot., ECF No. 55 at 1.)

Preliminarily, I must address the Bank's argument that "the plausibility standards espoused by Ashcroft v. Iqbal, . . . 129 S. Ct. 1937 (2009), [and] Bell Atl. Corp. v. Twombly, 550 U.S. 544 . . . (2007)," govern the pleading of affirmative defenses. (Pl.'s Br. at 1, ECF No. 56. See also id. at 2-5.) In short, the Bank argues that I should apply the standard that is used to analyze Rule 12(b)(6) motions when I analyze its Rule 12(f) motion. I shall not do so.

In Iqbal and Twombly, the Supreme Court described and applied a "two-pronged approach" that courts should use to analyze  motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Iqbal, 129 S. Ct. at 1950. First, the portions of the complaint that are "entitled to the assumption of truth" should be identified. Id. More specifically, the veracity of "well-pleaded factual allegations" should be assumed, while allegations that "are no more than conclusions" should be disregarded. Id. Next, it must be determined whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. See also id. at 1949 ("To survive a [Rule

7

12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[This] plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (quotation marks omitted).

The plausibility standard described in Twombly and Iqbal is based upon the Supreme Court's analysis of the terms of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) states that "a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added). Twombly and Iqbal instruct that if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief'" in accordance with Rule 8(a)(2). Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration brackets omitted) (emphasis added). See also Twombly, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting . . . agreement [to engage in anticompetitive conduct] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'") (emphasis added).

Rule 8(a) sets forth requirements applicable to "[a] pleading that states a claim for relief"; it does not govern the pleading of affirmative defenses.. The pleading rules that apply to affirmative defenses appear in Federal Rule of Civil Procedure 8(c), which states, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). There is a great distinction between the language of Rule 8(c)(1), which requires only that affirmative defenses be "affirmatively state[d]," and the language of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The plain language of the rules indicates not only that the Rule 8(a)(2) "entitlement requirement," Twombly, 550 U.S. at 557, does not apply to Rule 8(c) pleadings, but also that the Supreme Court's reasoning

8

in Twombly and Iqbal does not apply to the pleading of affirmative defenses. In other words, because the Court's plausibility standard "reflects the threshold [entitlement] requirement of Rule 8(a)(2)," Twombly, 550 U.S. at 557, and because Rule 8(c) lacks this "threshold requirement," the Supreme Court's opinions in Twombly and Iqbal should not be read to govern the pleading of affirmative defenses under Rule 8(c).

The Eighth Circuit has not yet addressed specifically the question of whether the Twombly/Iqbal plausibility standard should be used to analyze Rule 12(f) motions. It has, however, addressed the rules governing the pleading affirmative defenses, stating, "The rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997) (citing Fed. R. Civ. P. 8(c)). The Eighth Circuit has also held that a statute of limitations defense is sufficiently raised–and the requirements of Rule 8(c) are satisfied–"by [the] bare assertion" of the defense. Zotos v. Lindbergh School Dist., 121 F.3d 356, 361 (8th Cir. 1997) (quoting Daingerfield Island Protective Society v. Babbitt, 40 F.3d 442, 445 (D.C. Cir. 1994)). It seems to me that the rule advocated by the Bank, which effectively extends the Rule 8(a) pleading requirements to Rule 8(c) pleadings, is incompatible with the Eighth Circuit's holdings in Wisland and Zotos. I am mindful of the fact that these cases predate Twombly and Iqbal, but I see nothing in Twombly or Iqbal indicating that cases such as Wisland and Zotos are no longer valid, and I am not free to fashion a rule that stands in tension with the Eighth Circuit's opinions.

In support of its argument that I should apply the plausibility standard when analyzing its motion to strike, the Bank emphasizes that Federal Rules of Civil Procedure 8(a) and 8(b) contain some similar terms. (See Pl.'s Br. at 4-5, ECF No. 56.) As the Bank correctly notes, Rule 8(b) states that "[i]n responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it . . . ." Fed. R. Civ. P. 8(b)(1)(A). The Bank submits that because Rules 8(a) and 8(b) "both require a 'short and plain' statement," the "Twombly/Iqbal plausibility standard" should apply to the pleading of both claims and defenses. (Pl.'s Br. at 4, ECF No. 56.) I am not persuaded. In the first place, it is Rule 8(c), not Rule 8(b), that sets forth the rules for pleading affirmative defenses. Thus, any similarity between the language of Rules 8(a) and 8(b) does not

9

avail the Bank insofar as it seeks to have me apply the Rule 8(a) plausibility standard to pleadings governed by Rule 8(c). Furthermore, although it is true that Rules 8(a)(2) and 8(b)(1)(A) each share the words "short and plain," Rule 8(b) lacks the "entitlement requirement" that is central to the Supreme Court's reasoning in Twombly and Iqbal. The plain language of Rule 8 does not favor the extension of the plausibility standard to either Rule 8(b) defenses or Rule 8(c) affirmative defenses.

The Bank also argues that "applying the same [plausibility] standard to claims and defenses promotes fairness," adding that "what is good for the goose is good for the gander." (Pl.'s Br. at 5, ECF No. 56 (quoting Racick v. Dominion Law Assoc., 270 F.R.D. 228, 233 (E.D.N.C. 2010)).) I disagree with this notion. The separate rules governing the pleading of claims, defenses, and affirmative defenses use materially different language; thus, whether fair or not, there is no basis in law for applying the same standard to each pleading. Setting that point aside, I question whether it is truly fair to hold Rule 8(b) and 8(c) pleadings to the standards applicable to Rule 8(a) pleadings. As one district court has noted,

> Pleading standards that account for the differences between the pleading of claims and defenses make sense. Knowledge at the pleading stage is often asymmetrical, disproportionately favoring the pleading of a claim by a plaintiff who has had the opportunity to time its filing. While the plaintiff often can conduct an investigation before filing the complaint to ensure its allegations are adequately supported, the defendant must respond quickly after being served. See Fed. R. Civ. P. 12(a)(1)(A) (requiring a defendant to respond within twenty-one days of being served with the complaint, unless the defendant has waived service). Thus, the primary purpose of Rule 8(c) is to ensure that the plaintiff has adequate notice that a defense will be raised at trial or in a subsequent dispositive motion, and not to "show" the court or the plaintiff that the defendant is entitled to the defense.

Odyssey Imaging, LLC v. Cardiology Associates of Johnston, LLC, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010). See also 2 James Wm. Moore et al., Moore's Federal Practice § 8.08[1] (3d ed. 2011).

The Bank also refers me to several cases wherein courts required affirmative defenses to satisfy the plausibility standard or Rule 8(a) pleading standards. (See Pl.'s Br. at 4-5 & n.2, ECF No. 56 (citing cases); Pl.'s Reply Br. at 4, ECF No. 66 (citing Creative Food Products, LLC, v. Dickinson Frozen Foods, Inc., Civil No. 09-5118, 2011 WL 900677 (W.D. Ark. March 2, 2011)).) I accept that my view might be the minority one–though I note that other district courts in this circuit do share it. See Ash Grove Cement Co. v. MMR Contstructors, Inc., No. 4:10-CV-04069, 2011 WL 3811445

(W.D. Ark. Aug. 29, 2011); <u>Wells Fargo & Co. v. United States</u>, 750 F. Supp. 2d 1049 (D. Minn. 2010).  There is no controlling authority on point, and I respectfully disagree with those courts that have chosen to extend the plausibility standard or the requirements of Rule 8(a) to pleadings that do not state claims for relief.

In summary, I shall not apply the plausibility standard or Rule 8(a) pleading standards to Southwest Feeders' affirmative defenses.  Instead, when analyzing the Bank's motion to strike, I shall follow the framework outlined in Rule 8(c), Rule 12(f), and the Eighth Circuit's opinions about the operation of those rules.  <u>See, e.g.</u>, <u>Wisland</u>, 119 F.3d at 737 (explaining that affirmative defenses need only be stated in short and plain terms to satisfy Rule 8(c)); <u>Lunsford</u>, 570 F.2d at 229 ("A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." (citation omitted); <u>Stanbury Law Firm, P.A. v. Internal Revenue Service</u>, 221 F.3d 1059 (8th Cir. 2000) (noting that motions to strike are "viewed with disfavor and are infrequently granted" (quoting <u>Lunsford</u>, 570 F.2d at 229)); Fed. R. Civ. P. 12(f) (stating that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

As noted previously, the Bank has moved to strike seven of Southwest Feeders' affirmative defenses.  Restated in the order in which they appear in the Bank's brief, the relevant affirmative defenses are 1) that Southwest Feeders "did nothing wrong"; 2) the "innocent two parties rule"; 3) "implied waiver"; 4) "implied consent"; 5) "unjust enrichment"; 6) the "doctrine of avoidable consequences"; and 7) "mitigation of damages."  (Pl.'s Br. at 5-9, ECF No. 56.)  I find that all of these affirmative defenses are stated with sufficient clarity to satisfy Rule 8(c), and, as explained above, I shall disregard the Bank's arguments that the affirmative defenses fail to satisfy the plausibility standard.  I will now analyze the remaining arguments offered by the Bank in support of its motion to strike.

**1.      Southwest Feeders "Did Nothing Wrong"**

Southwest Feeders' second amended answer includes an affirmative defense stating, "[Southwest Feeders] [s]pecifically alleges that the Defendant did nothing wrong in the purchase of or sale of the cattle and/or calves that are the subject matter of this dispute."  (Second Am. Answer ¶ 14, ECF No. 51.)  The Bank argues that this defense is "legally insufficient" within the meaning

11

of Federal Rule of Civil Procedure 12(f).  (Pl.'s Br. at 6, ECF No. 56.) More specifically, the Bank argues that the defense "is not a recognized affirmative defense to a claim of conversion," adding that it "is merely a conclusory statement" that "fails to provide the Bank with fair notice of the basis" for the alleged defense.  (Id. at 5-6.)

In response to the Bank's argument, Southwest Feeders submits that in order to prevail on its conversion claim, the Bank must show that Southwest Feeders "wrongfully exerted" dominion over the Bank's property "in denial of or inconsistent with the [Bank's] rights therein." (Def.'s Response Br. at 7, ECF No. 62 (citing Polley v. Shoemaker, 266 N.W.2d 222 (Neb. 1978); Steenbergen v. First Federal Savings & Loan of Chickasha, 753 P.2d 1330 (Okla. 1987)).) Southwest Feeders then argues that it did not act "wrongfully" for two separate reasons.  (Id. at 7-9.) First, Southwest Feeders claims that the Bank "either expressly or impliedly consented to the sale[s]."  (Id. at 8.)  Second, Southwest Feeders argues that it "is . . . protected from any conversion liability" by federal statues, by a federal regulation, and "by the failure of Plaintiff to file an [Effective Financing Statement] in the Nebraska central filing system."  (Id. at 9.)

In reply, the Bank argues that if wrongful conduct is indeed an element of its conversion claim (as Southwest Feeders asserts), then Southwest Feeders' defense is not an affirmative defense; rather it is "an attempt to negate one of the elements of proof [of] the Bank's claim for conversion." (Pl.'s Reply Br. at 5, ECF No. 66.)

I agree with the Bank that a defense that negates an element of a claim generally should not be designated as an "affirmative defense."  See Black's Law Dictionary 55 (deluxe 5th ed. 1979) (defining "affirmative defense" as "new matter which, assuming the complaint to be true, constitutes a defense to it").  Thus, Southwest Feeders erred by listing its "did nothing wrong" defense among its affirmative defenses.  It does not follow, however, that the defense must be stricken due to its mistaken designation.  On the contrary, such errors are routinely disregarded.  See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1269 (3d ed. 2011) ("The federal courts have accepted the notion of treating a specific denial that has been improperly denominated as an affirmative defense as though it were correctly labeled.  This is amply demonstrated by the fact that research has not revealed a single reported decision since the promulgation of the federal rules in which an erroneous designation resulted in any substantial prejudice to the pleader.").  Despite its

12

erroneous designation, the defense puts the plaintiff on notice that it will be put to its proof on the issue of the wrongfulness of the defendant's conduct.  The defense is not insufficient as a matter of law.

The Bank also argues in its reply brief that the defense is "redundant," and therefore eligible to be stricken under Rule 12(f), because the answer raises "express or implied consent" as a separate affirmative defense.  (Pl.'s Reply Br. at 5-6.)  Although it is true that Southwest Feeders has offered the Bank's express or implied consent as one reason for denying that it acted wrongfully, it also argues that its denial is appropriate because Southwest Feeders "is . . . protected from any conversion liability" by certain laws and "by the failure of Plaintiff to file an EFS in the Nebraska central filing system."  (Def.'s Response Br. at 9, ECF No. 62.)  I am not persuaded that the defense ought to be stricken on the ground that it is redundant.

## 2.      The "Innocent Two Parties Rule"

The second amended answer alleges "that the Plaintiff's claims are barred by the innocent two parties rule."  (Second Am. Answer ¶ 17, ECF No. 51.)  The Bank argues that this allegation must be stricken because it "is not a recognized affirmative defense to a claim of conversion" and is "legally insufficient under Rule 12(f)."  (Pl.'s Br. at 6, ECF No. 56.)

Southwest Feeders argues that the "Two Innocent Parties Rule"[5] operates in Nebraska under the following circumstances: "where one of two innocent parties must suffer, he must bear the loss whose act put it in the power of the third party to commit the wrong."  (Def..'s Response Br. at 10, ECF No. 62 (quoting Smith v. Armour Packing Co., 158 F. 86, 88 (8th Cir. 1907)).  See also id. (citing Oleson v. Albers, 266 N.W. 632, 635 (Neb. 1936) ("Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.") (citation omitted)).)  Southwest Feeders adds that "[i]n Oklahoma, the Two Innocent Parties Rule[] serves to stop a party from attaching liability to another for the tortious conduct of a third person, when the party seeking to impose the liability created the opportunity for the third person to commit the tort."  (Def.'s Response Br. at 10, ECF No. 62 (citing Joy v. Farmers' National Bank of Chickasha, 11 P.2d 1074 (Okla. 1932); Adkisson v. Waitman, 213 P.2d 465 (Okla. 1949)).)

---

[5] It its brief, Southwest Feeders refers to the rule as the "Two Innocent Parties Rule," as opposed to the "innocent two parties rule."

Southwest Feeders submits that because the Bank "was in a far better position than Southwest [Feeders] to monitor its debtor (Dane Morris) and enforce its obligation," the two innocent parties rule is a proper affirmative defense in this case.  (Id.)

In reply, the Bank criticizes Southwest Feeders' reliance upon Smith v. Armour Packing Co., arguing that the Eighth Circuit's 1907 decision does not indicate that "Nebraska substantive [law] applied to the case."  (Pl.'s Reply Br. at 6, ECF No. 66.)  I agree; however, the remaining cases cited by Southwest Feeders do indicate that the two innocent parties rule has been applied in both Nebraska and Oklahoma.  (See Def.'s Response Br. at 10 (citing Oleson v. Albers, 266 N.W. 632, 635 (Neb. 1936); Joy v. Farmers' National Bank of Chickasha, 11 P.2d 1074 (Okla. 1932); Adkisson v. Waitman, 213 P.2d 465 (Okla. 1949)).)  Though Southwest Feeders' cases were decided long ago, the Bank refers me to no authority specifically stating that the rule is no longer viable.

The Bank also argues that Southwest Feeders' reliance on the rule "presupposes [Southwest Feeders'] innocence," stating, "if Southwest [Feeders] is found to be liable to the Bank for conversion, Southwest can hardly argue that it is an innocent party to which the purported 'two innocent parties' rule should apply."  (Pl.'s Reply Br. at 6, ECF No. 66.)  It then refers me to a Nebraska case suggesting that "innocence"–or more precisely, good faith–is no defense to a conversion claim.  (See id. (quoting State Securities Co. v. Svoboda, 110 N.W.2d 109, 112 (Neb. 1961)).)  See also Svoboda, 110 N.W.2d at 114 ("It follows that the auctioneers who assisted in the conversion by sale of the mortgaged property are liable to the plaintiff mortgagee therefor.  Their good faith and lack of knowledge of the plaintiff's mortgage are not a defense to the action.  Neither is it a defense that the mortgagor was present and was identified as the seller.").  In essence, this amounts to an argument that the alleged affirmative defense fails on its merits.

Although it is not yet clear whether Nebraska or Oklahoma law will apply in this case, there appears to be some authority in support of each party's position about the significance of Southwest Feeders' good faith and/or the Morrises' fraud.  The facts must be developed further and the applicable law must be identified before I attempt to resolve this dispute. To resolve the plaintiff's motion to strike, however, I need only determine whether the affirmative defense raises a question of law that the court ought to hear.  It does; therefore, I shall not strike the affirmative defense.

### 3.    Implied Waiver

The second amended answer alleges that the Food Security Act "allows . . . buyers or sellers [of farm products] to either take farm products free from a security party's [sic] interest or, if a proper Effective Filing Statement is filed by a secured party of farm products, to take such farm products 'subject to' the security interest, unless by performing any payment obligation 'or otherwise,' which includes ALL common law defenses, including implied consent and waiver through a course of conduct." (Second Am. Answer ¶ 13, ECF No. 51.)  Though its wording could be clearer, this allegation raises the possibility that Southwest Feeders will rely upon the theory of implied waiver.

Recognizing this, the Bank has moved to strike the affirmative defense of implied waiver, arguing that the defense was "barred as a matter of law" in AG Services of America, Inc. v. United Grain, Inc., 75 F. Supp. 2d 1037 (D. Neb. 1999).  (Pl.'s Br. at 6-7, ECF No. 56.)  In AG Services, the court held that "United Grain, as a corn buyer, cannot raise the implied waiver defense because valid Effective Financing Statements had been filed within the meaning of 7 U.S.C. § 1631 and the underlying Nebraska law." 75 F. Supp. 2d at 1050.  As Southwest Feeders correctly notes, however, there is no indication that the Bank filed an Effective Financing Statement in Nebraska.  Southwest Feeders argues further that under these circumstances, the defense of implied waiver is available in both Nebraska and Oklahoma–though it admits that there are authorities holding to the contrary. (Def.'s Response Br. at 12 & n.6, ECF No. 62.)  The Bank replies that Southwest Feeders "can cite no case law applying Revised Article 9 of the U.C.C. which states that an implied waiver defense does apply," and it adds that revisions to the Oklahoma U.C.C. should be interpreted to bar defenses such as implied waiver.  (Pl.'s Reply Br. at 7-8, ECF No. 66.)

As I noted previously, I need not settle the parties' legal dispute in order to resolve the Bank's motion to strike.  For present purposes, I need only determine whether the defendant's pleading of "implied waiver" fairly presents a question of law that the court ought to hear.  I find that I must hear the parties' arguments about the applicability of the implied waiver theory before disposing of it on its merits, and therefore I shall not strike the theory from the pleading.

4.      **Implied Consent**

        The second amended answer "alleges that the Plaintiff authorized, consented to and acquiesced in the sale of the cattle or calves." (Second Am. Answer ¶ 12, ECF No. 51.)  The Bank interprets this language as an "implied consent" affirmative defense, (Pl.'s Br. at 8, ECF No. 56), though it seems to me that it also raises the issue of "express consent."  In any event, the Bank argues that the affirmative defense of implied consent  is legally insufficient because "mere consent to the sale of collateral is not, in and of itself, consent to the disposition of the collateral free and clear of a security interest or consent to the disposition of the proceeds of the collateral to someone other than the Bank."  (Id. at 7-8.)  In other words, the Bank argues that the pleading is insufficient because it does not conclude with the words "free and clear of the Bank's perfected security interest."  (Id. at 7 (emphasis omitted).)

        In response, Southwest Feeders "concedes that it should have expressed this defense better by also saying that Plaintiff not only consented, authorized and acquiesced to the sale of cattle collateral, but that Plaintiff consented, authorized, and acquiesced . . . to the payment of both purchase and sale proceeds by means of non-jointly payable checks written directly to Dane Morris as payee by Southwest [Feeders]."  (Def.'s Response Br. at 13, ECF No. 62.)  It adds, "To that extent, Southwest [Feeders] requests, and will make a future motion, to amend its affirmative defenses accordingly."  (Id.)  Indeed, as I noted previously, Southwest Feeders has moved for leave to amend its affirmative defenses, (see ECF No. 68), and it proposes to amend the relevant allegation to state,

> [Southwest Feeders] [s]pecifically alleges that the Plaintiff not only consented, authorized, and acquiesced to the sale of the collateral, but also that the Plaintiff consented, authorized, and acquiesced to the payment of both cattle purchase and sale proceeds checks by the Defendant and non-jointly payable checks paid directly to Dane Morris as sole payee.

(Def.'s Index, Attach. 1, ¶ 4, ECF No. 69-1.)

16

In reply, the Bank argues that the proposed amendment[6] does not render the affirmative defense sufficient as a matter of law.  More specifically, it claims that the affirmative defense is "irrelevant" because the U.C.C. lacks "language indicating an implied consent defense [is available] with regard to the proceeds of collateral," and it repeats its argument that the defendant's failure to allege that the Bank authorized the disposition of the livestock free of the security interest is fatal to the affirmative defense.  (Pl.'s Reply Br. at 9, ECF No. 66.)

In paragraphs 27, 28, and 37 of its complaint, the Bank alleges that Southwest Feeders remitted "the proceed[s] from the sale of the [livestock] to Lucky Moon and/or the Morrises without including the Bank's name on the check," and thereby exerted "unauthorized and wrongful" dominion and control "over the [livestock] and the proceeds of the [livestock] in which the Bank had a security interest."  The defendant's proposed amended affirmative defense amounts to a denial of these allegations.  For the reasons explained below, the defendant will be granted leave to amend its affirmative defenses, and the "consent" language at issue here will not be stricken merely because it might not be appropriate to designate it as an affirmative defense.  (See supra Part III.B.1 (explaining that the court will not strike a denial that was improperly designated as an affirmative defense).)

5.    **Unjust Enrichment**

The second amended answer states,

> [Southwest Feeders] [s]pecifically alleges that if the Defendant is liable to the Plaintiff for any loss, the same being specifically denied, that the Plaintiff has been unjustly enriched for the amount of costs incurred by the Defendant to feed, doctor, hedge, processing medication, brand inspection fees, insurance premiums, freight, put option contract costs, forward contract costs and interest.

(Second Am. Answer ¶ 18, ECF No. 51.)  Though Southwest Feeders concedes that this sentence could be "better stated," (Def.'s Response Br. at 15, ECF No. 62), it raises plainly the issue of unjust enrichment.

---

[6] The Bank did not have the proposed amendment before it when it submitted its reply brief; however, the proposed amendment tracks the language used by Southwest Feeders in its response brief.  (Compare Def.'s Response Br. at 13, ECF No. 62, with Def.'s Index, Attach. 1, ¶ 4, ECF No. 69-1.)

The Bank argues that this paragraph must be stricken because "unjust enrichment is generally considered [a] legal claim and not an affirmative defense." (Pl.'s Br. at 8, ECF No. 56. See also Pl.'s Reply Br. at 10 (citing Ag Services of America, Inc. v. Empfield, 587 N.W.2d 871 (Neb. 1999)).) I shall not strike the "unjust enrichment" theory solely on the ground that it may have been mistakenly designated as an affirmative defense. See Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates . . . a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . . .").

The Bank also argues that unjust enrichment is not available to Southwest Feeders in this case because the defendant "has not alleged in its answer any facts to suggest that an implied contract existed between Southwest [Feeders] or the Bank with regard to the feed and care of the [relevant livestock]." (Pl.'s Br. at 9, ECF No. 56.) It adds, "Similarly, Southwest [Feeders] has failed to articulate any legal basis for which the Bank would not be entitled to the full, fair market value of the cattle in which it held a perfected security interest. Southwest [Feeders] has further failed to allege how, if at all, its feed and care expenses, which were incorporated into the value of the [livestock], was superior to the Bank's security interest in the [livestock]." (Id. (citation omitted).) As I have explained previously, Rule 8(c) does not require the defendant's pleading to include this level of detail. Paragraph 18 will not be stricken on the ground that it does not incorporate "every step of legal reasoning that may be raised in support of [the] affirmative defense." Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997).

Both the Bank and Southwest Feeders cite Day v. Case Credit Corp., 427 F.3d 1148, 1154 (8th Cir. 2005), which contains the following discussion of unjust enrichment (based on Arkansas cases):

> "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Sparks Regional Medical Center v. Blatt, 55 Ark. App. 311, 935 S.W.2d 304, 317 (1996 (citations omitted). The party claiming unjust enrichment must prove another's receipt of "something of value to which he is not entitled and which he should restore. There must be some operative act, intent, or situation to make the enrichment unjust and compensable." Smith v. Whitener, 42 Ark. App. 225, 856 S.W.2d 328, 329 (1993). It is not necessary to show the party unjustly enriched committed any wrongdoing–even an innocent party "may be compelled to surrender the fruits to a more deserving party." Id. at 330. Rather, "[i]f one has

18

money belonging to another, which, in equity and good conscience, he ought not to retain although there is no privity between the parties." Id. Parties seeking to invoke the court's equitable powers, however, must be themselves deserving of equity. "The clean hands maxim bars relief to those guilty of improper conduct in the matter as to which they seek relief." Merchants & Planters Bank & Trust Co. of Arkadelphia v. Massey, 302 Ark. 421, 790 S.W.2d 889, 891 (1990).

(See Pl.'s Br. at 8, ECF No. 56; Def.'s Response Br. at 15, ECF No. 62.) It seems to me that the facts must be established, and the Bank's claim must be resolved, before it can be determined whether it would be equitable to require the Bank to make restitution to Southwest Feeders for the costs and expenses associated with the sale of the livestock. See, e.g., Stark v. Soteria Imaging Services, Inc., 276 F. Supp. 2d 989, 994 (D. Neb. 1993) ("Whether a defendant has been unjustly enriched is a question of fact." (citing Hoffman v. Reinke Mfg. Co., 227 Neb. 66, 416 N.W.2d 216, 219 (1987)).)[7] I should hear the parties' arguments about unjust enrichment at a more appropriate point in the progression of this case, and I will not strike the matter from the second amended answer.

The court notes in passing that Southwest Feeders argues that "an affirmative defense of estoppel by silence" also may be applicable in this case. (Def.'s Response Br. at 17, ECF No. 62.) "Estoppel by silence" was not pleaded in the second amended answer, but it has been proposed for inclusion in the third amended answer. (See Def.'s Index, Attach. 1, ¶ 4, ECF No. 69-1.) Southwest Feeders' motion for leave to amend its answer will be addressed below.

_____

[7] The Bank cites Stark for the proposition that "where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." 276 F. Supp. 2d at 994 (quoting Haggard Drilling, Inc. v. Greene, 236 N.W.2d 841, 846 (Neb. 1975)). (See also Pl.'s Br. at 8, ECF No. 56; Pl.'s Reply Br. at 11, ECF No. 66.) Casting itself in the position of a third party beneficiary of a contract between Southwest Feeders and the Morrises, the Bank argues that the Morrises' failure of performance does not give rise to an unjust enrichment claim against the Bank. (See Pl.'s Br. at 8-9, ECF No. 56; Pl.'s Reply Br. at 11, ECF No. 66.) As the court noted in Stark, however, it would be premature for me to conclude that the Bank was no more than a third party beneficiary of a contract between the Morrises and Southwest: the pleadings raise the question of whether there was a quasi-contract between the Bank and Southwest. See 276 F. Supp. 2d at 994.

19

6.      **The Doctrine of Avoidable Consequences and the Mitigation of Damages**

The second amended answer states, "[Southwest Feeders] [s]pecifically alleges that Plaintiff's claims are barred by the doctrine of avoidable consequences" and "[s]pecifically alleges that if the Plaintiff sustained any damages, the same being specifically denied, that the Plaintiff failed to mitigate such claimed damages."  (Second Am. Answer ¶¶ 16, 19, ECF No. 51.)

The Bank argues that "the doctrine of avoidable consequences is merely another name for the failure to mitigate damages," and therefore one of the defenses must be stricken on the ground that it is redundant.  (Pl.'s Br. at 9-10, ECF No. 56 (citing Borley Storage & Transfer Co. v. Whitted, 710 N.W.2d 71, 80 (Neb. 2006)); Pl.'s Reply Br. at 12, ECF No. 66 (quoting Whitted, 710 N.W.2d at 80).)  Citing the Second Restatement of Torts, section 918, Southwest Feeders argues in response that there is a distinction between the two defenses.  (Def.'s Response Br. at 18-19, ECF No. 62.)  More specifically, the defendant claims that "the [d]octrine of [m]itigation of [d]amages requires that the party against whom it is used [must] have knowledge of the harm caused before the requirement to mitigate damages takes effect," while "the [d]octrine of [a]voidable [c]onsequences does not . . . require [such knowledge] . . . where a party 'heedlessly failed to protect his own interest.'"  (Id. at 19 (emphasis omitted).)  This alleged distinction evidently is not recognized under Nebraska law, however, see Whitted, 710 N.W.2d at 80 (stating that the doctrine of avoidable consequences is another name for the failure to mitigate damages); Gottsch Feeding Corp v. Red Cloud Cattle Co., 429 N.W.2d 328, 333 (Neb. 1988) (same), and Southwest Feeders cites no authority suggesting that it is recognized under Oklahoma law, (see generally Def.'s Response Br., ECF No. 62).  I find that paragraph 19 of the second amended answer, which alleges that the plaintiff failed to mitigate its damages, is redundant, and it shall be stricken.

The Bank also argues that Southwest Feeders "cannot allege, as it did in its answer, that the Bank's claim for conversion is completely barred" because the doctrine concerns only the extent of the plaintiff's damages–not the defendant's liability for conversion.  (Pl.'s Br. at 10, ECF No. 56.)  In essence, the Bank objects to Southwest Feeders' use of the word "barred" in paragraph 17 of its second amended answer (at least insofar as "barred" is coupled with the word "claims" rather than "damages").  Though the Bank's reading of the answer is not unreasonable, 12(f) does not require parties to write with perfect grammar or phrasing, and it does not cast courts in the role of copy

20

editors.  The doctrine of avoidable consequences has been pleaded sufficiently, and it shall not be stricken on the ground that the defendant may have overstated its potential effect on the plaintiff's claims.

Finally, the Bank argues that the doctrine of avoidable consequences is inapplicable in this case because "no further damage occurred after the commission of the tort."  (Pl.'s Br. at 10, ECF No. 56.)  More specifically, the Bank claims that "the conversion occurred, . . . the Bank suffered damages when . . . Southwest [Feeders] failed to pay to the Bank the proceeds from the sale of . . . [the] cattle," and "there was nothing for the Bank to attempt to mitigate" following "this act of conversion" by the defendant.  (Id. at 10-11.)  The Bank's argument depends on an assumption that a single transaction, payment, or conversion caused all of the Bank's damages.  This has not been established.  On the contrary, Southwest Feeders argues that a series of transactions occurred, and the Bank was well aware that the transactions were occurring.   The doctrine of avoidable consequences will not be stricken

In summary, Southwest Feeders' allegation that the Bank failed to mitigate its damages, which appears in paragraph 19 of the second amended answer, will be stricken on the ground that it is redundant.  In all other respects, the Bank's motion to strike is denied.

### C.   The Defendant's Motion for Leave to Amend Its Affirmative Defenses

Southwest Feeders has moved for leave to amend its affirmative defenses.  (ECF No. 68.)  The Bank has objected to Southwest Feeders' motion, arguing that because the proposed amended pleading "repeats most of the affirmative defenses which are the subject of the Plaintiff's Motion to Strike Affirmative Defenses," "the Defendant should not be allowed to [amend its affirmative defenses] until the Court has ruled upon the pending Motion to Strike."  (Pl.'s Objection at 1, ECF No. 70.)  I have now resolved the Bank's motion to strike, and in light of the analysis set forth above in Part III.B., I shall sustain part of the Bank's objection to the proposed amended pleading.  To the extent that the proposed pleading attempts to re-assert both the doctrine of avoidable consequences and the failure to mitigate damages, Southwest Feeders' motion for leave to amend its affirmative defenses is denied.  Conversely, I shall grant Southwest Feeders leave to file a redacted version of the proposed pleading that conforms with my analysis of the Bank's motion to strike.

**D.     The Defendant's Motion for Leave to Supplement Its Affirmative Defenses**

Southwest Feeders claims that it inadvertently omitted the affirmative defense appearing in paragraph 13 of the second amended answer from its proposed third amended answer.  (Compare Second Am. Answer, ECF No. 51, with Def.'s Index, Attach. 1, ECF No. 69-1.)  The defendant seeks leave to re-assert this affirmative defense when it files its new amended answer, and it advises me that the Bank has no objection to this request.  (See Def.'s Mot. at 1-2, ECF No. 74.)  The defendant's motion is granted, and the defense may be incorporated into Southwest Feeders' new amended pleading.

**IT IS ORDERED** that:

1.      the plaintiff's motion to strike, (ECF No. 55), is granted in part as explained in the memorandum accompanying this order;

2.      the plaintiff's objection to the defendant's evidence, (ECF No. 65), is sustained;

3.      the defendant's motion for leave to amend its affirmative defenses, (ECF No. 68), is granted in part as explained in the memorandum accompanying this order;

4.      the plaintiff's objection to the defendant's motion for leave to amend, (ECF No. 70), is sustained in part as explained in the memorandum accompanying this order; and

5.      the defendant's motion for leave to supplement its affirmative defenses, (ECF No. 74), is granted.

Dated October 4, 2011.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge